Mr. Justice Nott
delivered the opinion of the court:
In support of this motion, the two following grounds are taken.
1st. That the tax was not due at the time the execution, was issued.
2nd. That the act subjecting a person to an executiozi without any legal trial and judgment, is unconstitutional and void.
In determining the first question, it is not pretended *57 that this court can set limits to the discretion which the Legislature may exercise in selecting the subjects of taxation. Neither is it denied that they have the. power to fix the time when the tax shall become due, and to prescribe the mode by which it shall be collected. We are merely to give construction to the law, to declare what the Legislature have done, and not what they can, or may do. It is admitted that this is an annual tax: It is therefore necessary to fix a period when it shall commence. If the act had fixed a time when this particular tax should be paid, there would have been an end to the question. But &s there is no particular time mentioned, we must look to the general provisions of the law in relation to other subjects of taxation, for the construction with regard to this. And as far as we are able to trace the acts of the Legislature back, it appears that the first day of October has always been the period to which the assessments have been made to relate. The quantity of land and the number of negroes owned, the amount of money at interest on that day, and the amount of professional income received during the year terminating at that period, have always constituted the basis of taxation. To this rule, there have been at most, but two exceptions; one is the tax upon stock in trade, the amount of which is, by an express provision of the act, to be estimated on the first day of January $ the other, the tax upon Theatrical exhibitions, shows, &c. which by a similar provision becomes due whenever it shall be demanded by the clerk of the court, and which, ■from the nature of the tax itself, must have been an exception, because it is to be paid per diem, and not per anmim. Whenever a new subject of taxation is introduced, it must be governed by the general provisions of the law of which it is a part, and not by the exceptions; unless the nature of the tax should lead to a different conclusion. Indeed, this is the only practical construction which can be given of the law. For the tax-collector is required to complete his collections and settle his accounts by the first of May ; after which, according to his construction, a *58 person may erect as many lottery offices, and sell as many tickets as he pleases with impunity. In answer to this, however, it is said that the tax-collector might proceed at any time when an office should be opened, to collect the money, and to issue an execution for that purpose, whenever the tax i's withheld, in the same manner as is directed in the clause, relative to plays, shows, &e. But the act. gives the tax-collector no such authority as is given to the clerk in the clause alluded to. When he has closed his accounts, there is an end of his authority for that year. — ■ It is also further contended, that unless he may demand the tax whenever the office is opened, it may be altogether evaded, because it might not be open on the first day of October ; but I do not know that it would be necessary that the office should be open on that day to render the proprietor liable to the tax. Professional income is not received on the first day of October, yet the person is liable to be taxed for the amount of income received during the preceding year. But suppose that by this construction the tax be eluded, it is no more than may be done with respect to almost every other tax. Suppose a person should purchase land and negroes on the second day of October, and sell them on the last day of September following ; or should lend money and receive it back in the same manner; it will be seen that he would receive the annual profits of his lands, the labour of his negroes, and the interest of his money, and yet evade the tax ; but that results from the terms of the law itself, and not the administration of it. The assessment of this tax could not have had relation to the October preceding.
1st. Because the language of the act is prospective ; and
Sndly. Because the office was opened after the passage of the law. I am therefore of opinion that the tax was not duo, and that the execution was prematurely issued. This view of the subject, so far as regards this case, dispenses with the necessity of giving any opinion on the other ground. But as the tax-collector may feel authorized to proceed to collect the tax at the end of the year, un *59 less an opinion is given on the other ground, the court has thought it best to decide the whole case.
The second ground presents the two following ques* lions for our consideration :—
1. Whether supposing this to be a tax as It is called by the act, the collector can enforce the payment of it in this summary manner, or whether the fact on which the Relator’s liability is predicated, must first be established by the verdict of a jury.
2. Whether it must not be considered Rather in the nature of a penalty than a tax; in which case, it is still more confidently contended, that the part of the act authorizing the tax-collector to issue an execution without a trial by jury, is unconstitutional and Amid. The clause of the constitution under which the Relators claim this privilege, is in the following words : — “ No freeman of this state shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner destroyed or deprived of his life, liberty, or property, but by the judgment of his peers, or by the law of the land.” In order to a correct decision of the first question, it is only necessary to settle the meaning of the words in the constitution, “the law of the land.” And on that subject, little more need be said than to refer to the commentaries on Magna Charta, from whence they have been copied. Dr. Sullivan, in his lectures, after commenting upon various parts of Magna Charta, says, “ let us next consider the end of this payt, which is an exception running through the whole; nisi per legale judicium parium suorum vel per legem terree. Now the lex terree, the common law, in the universal practice of it, allows these exceptions, &c.” And in page 493 and 494, he enumerates several cases where the courts of laAV may proceed to give judgment per legem terree, without the intervention of a jury. As in all cases, where a person makes default or confesses judgment; all cases of demurrer and special verdicts; cases of contempt, &c.; and concludes with the Avoids of Lord Coke, “ the due process *60 of the law is lex tcrrm.” See also the case of Zylstra vs. the Corporation of Charleston, 1 Bay, 390. To these may be added, the confinement of persons for safe custody, who arc accused of high crimes and misdemeanors ; all cases in the Courts of Equity, and in the Courts Military, Maritime and Ecclesiastical, the proceedings of which are carried on without the intervention of a jury.— Distress for rent also is another case within the exception; and last, though not less satisfactorily established, distress for taxes. All these and many others wh¡ich might be mentioned, are carried on by the well known and established principles of common law or lex terras, without the aid of a jury. This method of collecting taxes is as well established by custom and usage as any principle of the common law. similar practice prevailed in all the colonies from the first dawn of their existence ; it has been, continued by all the states since their independence, and had existed in England from time immemorial. Indeed, it is necessary to the existence of every government, and is based upon the principle of self-preservation. I do not consider it as deriving any support from that provision in the constitution, that all Jaws then in force should continue so, until altered or repealed. I cannot believe that the authors of that instrument intended to give effect to laws, the provisions of which were in direct .hostility to the constitution itself. That clause was introduced, I presume, through abundance of caution, to remove any doqbt which otherwise might have been entertained, whether all pre-existing laws might not have been prostrated by the abolition of the old constitution. I think therefore that any legal process which was originally founded in necessity, has been consecrated by time, and approved and acquiesced in by universal consent, must be an exception to the right of trial by jury, and is embraced in the alternative, “the law of the land.” Such I consider to be the summary proceeding allowed in the collection of taxes; and I should think the proceeding in this óase authorized by the law of the land, if I could consider the *61 sum required to be paid as a tax. The second question presents the case in a very different shape. The sum of ten thousand dollars is imposed upon every person who shall “ open or keep open any office for the sale of lottery tickets, or shall sell any lottery tickets, &cN It is not laid upon the property; it is not laid upon the person, nor on the income; it is not measured by the value of the property, nor the amount of the proceeds derived from the'office, but is in fact a penalty on the act of opening, keeping open an office, or selling the tickets, It is not limited in its operation within any definable bounds, but may be ramified into as many ten thousand cases as there are persons concerned in the act of selling. The act also, in substance, declares its object to be the suppression of vice. It appears to me therefore as much a penalty as the sum of one hundred pounds formerly inflicted upon a person who should be convicted of killing a negro, and the question is, whether it is to be considered a tax merely because the act has called it so ? If the nature of the thing can be changed by merely chang-. ing the name, every penalty may be converted into a tax. And there can be no doubt but that the numerous assaults and battery and other misdemeanors with which our courts are crowded, wquld become fruitful sources of revenue to the state. But it would be a commutation much more friendly to the civil list than to the liberty of the citizen ; and if they had not been willing to have renounced the one, to have secured the other, the article of the constitution now under consideration, need never to have been penned. If it is to be considered in the nature of a penalty, (and I can have no other view of it,) it is a direct and manifest violation of the constitution. It is the last clause of the act, and in all probability was introduced near the close of the session, the period of time the least propitious to that due deliberation with which the acts of that body are usually marked. I cannot believe that there was an individual member of that Legislature, who would deliberately consent to authorize a tax-collector, at his arbitrary ivill and pleasure, to adjudge a person -guilty of an act which / *62 would subject him to a penalty of ten thousand dollars and issue his execution either against his goods or his person for the amount, without even the semblance of a trial. I have already shewn what is to be understood by the words in the constitution, <e the law of the land.” The constitution intended to impose a restraint upon the Legislature as well as upon the other departments of government ; and it would have been idle to impose upon them a restraint which it was in their power to remove, by performing the very act which it was intended to prevent.' — ■ The constitution, says Judge Patterson, is the form of government delineated by the mighty hand of the people, in which certain first principles of fundamental laws are established. It fixes the limits to the exercise of Legislative authority, and prescribes the orbit within which It shall move. It says to the Legislature, so far sha It thou go and no farther. Our constitution prohibits the Legislature to es deprive any man of his liberty, except by his peers, or by the law of the land;” yet this act gives to the tax-collector authority to adjudge the person accused, guilty of the act charged against him without a trial by jury, or in any other form, and to enforce the payment of the penalty by imprisonment, if he has no property out of which the money can be made ; and if there is any principle of constitutional law by which it can be justified, I have yet to learn where it is to be found. I do not contend that the Legislature could not enforce such a penalty (or lay such a tax, if that phraseology is more agreeable, though I think it to be incorrect,) nor that they cannot prescribe the mode of. compelling' the payment of it, but that the liability of the party must first be established by a jury of his country, and not by the arbitrary fiat of any individual. The motion therefore must be granted;
Ilayne, Att’y Gen. for the motion.
Grimke, contra.
Justices Coleo cíe and Johnson, concurred.